We'll hear the next case. Vlajevardian v. The Republic of Argentina. Good morning, Your Honors. May it please the Court. My name is Jessica Slater, and I represent the plaintiffs' appellants who are bondholders in this action against Argentina. Of course, this Court is well familiar with the litigation that's been brought by bondholders against Argentina following its default in 2001, seeking to recover what they are owed on their bonds issued pursuant to the Fiscal Agency Agreement, the FAA. The FAA specifically contains a pari passu clause that requires equal or rateable payment to the bondholders, including the appellants, if Argentina determines that it's going to pay other bondholders. Here, the District Court granted the appellants' judgments in 2007 for the principle of their bonds, plus interest on the principle of those bonds, and statutory prejudgment and postjudgment interest. Because of the value of the interest, the 150 percent principle that's been offered in the public offer from Argentina to the bondholders, or the value of the judgment far exceeds the 150 percent principle that's been offered to my clients and other bondholders pursuant to the public offer. Because of this— Let me just ask you a question. Is there any point in time when Argentina possessed the position in an irrevocable assignment of the proceeds to the trust prior to the time that the proceeds ever came into a bank account? So they were gone. So there wasn't a moment, I think, when they held them themselves as the Republic. Is that incorrect, or is that from your perspective? That's correct. So was there any support in the trust agreement? And I'm looking at Appendix 184. Do you have any language which supports in the trust agreement anything other than an irrevocable assignment of the entirety of the proceeds, first to the Bank of New York Mellon to dispense with them in one fashion and then to go to the BCRA after that? Is there something that you can point to? Yes. I'm actually glad that you brought that up, Your Honor. One of the issues that we had was the lack of form, essentially the trust agreement language overlooking at substance of the facts and the context of the overall transaction, which in this case involved the bond offering that at the same time, as you noted, included the trust agreement that would make sure that the proceeds were paid to bondholders to satisfy their debts. In the trust agreement itself, as the analysis under Buvez looks at for turnover of those proceeds, it isn't so much whether or not Argentina possessed those proceeds, but whether or not it had an interest in them. Had or currently possesses. It seems as if the CPLR requires a current interest, not an interest which may have been in existence at a prior time. Yes. Sorry. I misstated that. It is our position that Argentina continues to retain an interest. And going to your previous question, the trust agreement specifically details that Argentina is deciding which of these beneficiary bondholders are to be paid from those proceeds. Section I. What is Argentina's interest? Argentina's interest is in having the proceeds be paid to its bondholders for release of the claims against it. If that doesn't occur, if the bondholders don't agree to release their claims, they won't be paid the proceeds. And that's all pursuant to Argentina's determination. Have you found any cases granting a turnover order involving funds held in a trust, in an irrevocable trust? Unfortunately, I did not. And that was part of the reason that we analogized it to the bank account situation and escrow accounts, because those, even though it's not exactly the same, those are situations where courts have found that turnover was appropriate. But aren't those profoundly different? I mean, we have the legal device of an irrevocable trust for a reason, and it's called irrevocable for a reason. We have a whole body of trust law that makes it quite different, which is the focus of Judge Forrest's question about what control and what interest remained after the execution of the trust. I'm not seeing anything. I guess you're saying that because they have some voice in the direction of payment of the bondholders, even though they don't have an interest and cannot possess the funds, no matter how much is left over at the end when it goes to the bank, that you think that is enough to make us overlook, to require us to overlook the boundaries of a trust. Is that right? Yes. And also, actually, in some of the cases that were cited by the appellees, in tax situations, when the IRS is looking at different estates and different properties as to whether or not certain individuals have an interest and whether that's taxable, it looks at the overall, you know, facts and circumstances of situations. And even in cases of irrevocable trusts, sometimes it's been found that the settler or the grantor actually has this interest because it directs who receives and who the beneficiaries are of the funds in the trust. Even if the Republic has an interest, is there any way it can get the funds back now? In the trust agreement itself, it states that in Section 13, Argentina has a right to amend and waive certain provisions in the trust agreement. And going back to some of those tax cases, in those situations, it's been found that if a settler or grantor isn't specifically barred, like what the decision was in the DeSalt case, you know, by a court order or a stipulation or anything like that, and is able to make changes in any way, even if it is by virtue of another party also agreeing to that, as in this case, it might be Bank of New York, that still allows it to have that interest and to determine. Would that section allow Argentina to claw back the funds? I mean, if they wanted to amend the trust agreement to so provide, I think they could. You know, I think there's ways. And one of the other... Wasn't the assignment, going back to my first question, an irrevocable assignment prior to entry into the trust agreement? In other words, there was an irrevocable assignment first, then there was the entry into the trust agreement. So even if there was an alteration or an amendment at the trust agreement, would that impact the irrevocable assignment, or do I have that chronology wrong? I think you have it right. One of the issues, I guess, under the whole analysis here, though, that we're looking at, and I don't want to get too caught up in the, you know, different details and the different provisions of the trust agreement, is whether or not there is this interest. And like I mentioned, it isn't necessarily that Argentina has, you know, can direct the payments to itself, as Your Honor mentioned, you know, specifically. One of the items that we also brought up was that it could assign it to an agent or, you know, an alter ego, and that's one of the issues that we think is at play here. Thank you. We'll hear from the other side. Thank you. Good morning, Your Honors. And may it please the Court, Carmine Beccuzzi, on behalf of the Epley, the Republic of Argentina. The district court was correct in applying the Bouvet test and finding that these funds were not subject to attachment. As Your Honor mentioned, there was an irrevocable assignment upon the raising of the capital directing these funds. The first tranche, this over $6 billion that went to the creditors, payment to whom, was a requirement ordered by the court below and affirmed by this Court. Could the agreement be amended? The ---- What appears to be irrevocable? Revocable? I don't see how that's possible. That's a suggestion, as I understand it. The language that my opponent pointed to is just general language in Article 13 of the trust agreement that says there may be amendments upon signature of all the parties to the trust instrument. So Bank of New York would have to agree with that, and Bank of New York otherwise has obligations to send the money to the beneficiaries. So I don't see how that could be done. If, to take a hypothetical, that were done and all of a sudden Argentina did have an interest under the CPLR, then perhaps there would be a new motion based on that set of facts, which are not these set of facts, in which Argentina has, in fact, irrevocably alienated its right to these funds, and the funds are subject to specific provisions in the trust agreement as to where they're being paid. So if you apply, as this Court did in Dussault, in a similar situation, payment to a trustee, also Bank of New York, for bondholders, and the Court said, applying Bouvet, that there is no right to possession of that money in the Republic of Argentina, so can't check that box. And then number two, plaintiff does not have a claim superior to Bank of New York to those funds. So once you answer those questions in the negative, as the district court did, there is no right under the CPLR for these unsecured creditors to obtain turnover of the money in the settlement trust. With the Dussault case, if I've pronounced the name correctly, is that really on all fours with what's going on here? For example, the Bouvet case didn't involve any court order. The Court looked at the governing documents, and there, the securities agreement    of Argentina, so can't check that box. And it said, well, if you don't have a right to possess the funds, Bouvet is not satisfied. So here, even without a court order, you go back to the governing transaction documents, the purchase agreement in which you have that irrevocable alienation by the Republic of its interest in the funds, as well as the trust agreement which lays out where those funds are going and who has rights to it, none of whom are the Republic, and you get to the same result as Dussault, applying the same reasoning, I would say. But you're right, there is that one difference there in terms of what occurred. So given all that, the Court was clearly correct to deny the motion for turnover. And then also, it did not abuse its discretion in denying discovery. The discovery below, there was no actual formal discovery requested. It was a conditional statement in a brief. The plaintiff said, if Your Honor feels you need facts to decide this motion, we would like discovery. The Court didn't need facts. The HBE leasing case is clear. Summary proceedings are in the nature of summary judgment. Plaintiffs have never identified a material issue of disputed fact that requires discovery and that would change the outcome here. Given that, the Court clearly couldn't abuse its discretion in saying, I don't identify any material issue of disputed fact. Kagan. Couldn't there be possibly some issue of fact regarding the relationship of the Republic and the bank that would, the Argentine bank that, to whom the remaining proceeds would go upon termination of the trust? We've spoken about that relationship in other litigation, but I don't think you can use collateral estoppel against your opponent here, who wasn't party to that litigation. Correct. But what my opponent does have to deal with is the Bancet case and the recognition by this Court in the EM case from 2015 dealing with the Central Bank of Argentina that says the presumption of the law that the courts are required to follow is that they're separate. But, yeah, but that presumption can be overcome by a demonstration of day-to-day control, right? It can. And those facts could potentially change over time. That may have been litigated in the past, but perhaps now that relationship between the Republic and the bank have changed. And so why shouldn't they be entitled to some discovery about the relationship between the two as of today? Two things, Judge Carney. Number one, then they needed to identify what the facts were that they thought led to a alter ego relationship. And they had to do that in the context of this Court's ruling in the EM case, which went through a whole series of allegations concerning the relationship with the bank and said, this is not enough. They did not come up with anything and said, well, give us discovery and we will show alter ego. But even more importantly, even if you could assume an alter ego relationship here, then I think you come into the analysis in the Aurelius case and the Grenada case where the FSA comes into play. So they've now said there's an interest here. We're going to equate BCRA with the Republic of Argentina, and so we say there's an interest because the money is going to go back to Argentina. Well, Aurelius teaches that you've got to look at the money right now, and money in the hands of a third party is not a satisfaction of the requirements of Section 1610 that to have attachability or execution of the Foreign Sovereign Immunities Act, you have property in the hands of the foreign state being used for a commercial activity in the United States. We're talking about an interest, and I think Judge Gosset said it perfectly, a concern that the money may end up back in the hands of Argentina through BCRA. But that's not a present use in the United States for a commercial activity in the United States. As in Grenada, the money was going back to Grenada to go and pay off certain statutory corporations. This Court said, well, you failed the in the United States requirement of Section 1610. So even an alter ego, which I don't think they can show, and they never identified facts, and just to take one step back, the facts in terms of the independence of the central bank have only gotten better under the Macri administration. So all the policies that were complained about and were found insufficient in 2015, those things have dropped away. The central bank has only become more independent. So again, the idea that there are some facts that my adversary would identify that needs discovery for an issue which I think is ultimately legally irrelevant given the judge's FSIA analysis is a reason why discovery really doesn't work in that context either. Thank you. We'll hear from your colleague. May it please the Court, Eric Schaefer for Bank of New York Mellon. We're here in our limited capacity as settlement trustee. We start with the right to amend. A right to amend cannot undo an irrevocable transfer, and we as settlement trustee have a duty to hold funds for the named beneficiaries. Appellants are not among the named beneficiaries. The arguments that are presented here by the appellants, I think, rest on several erroneous premises. The notion that Argentina retains an interest because it is a settlor of a trust is contrary to the trust agreement. It's contrary to trust law. The settlor of an irrevocable trust has no interest. An alleged benefit to having payments made to your creditors doesn't create a legal interest. Let me just ask in terms of the way the agreement is structured. I understand that the proceeds were irrevocably assigned prior to the trust, and that the trust then identifies to whom those proceeds must go. Could an amendment occur which would allow for the payment of those proceeds, not just to beneficiaries with a big B as they're set forth in the trust agreement, but to beneficiaries with a little B? In other words, is that amendment possible? I really don't believe it is, Your Honor. And I say that because we as trustee have a duty to act for the named beneficiaries. It's not a flexible list. It's something that is fixed in the documents. I think, as you noted, the analogy to a bank deposit agreement is flawed. It is profoundly different from a trust. The notion that is in the briefs that all judgment creditors are trust beneficiaries is contrary to the express terms of the trust agreement and trust law. The notion that the central bank may be an alter ego is unsupported by any evidence. And in any event, there would be no basis for the Bank of New York Mellon as trustee to disregard the trust agreement. We have to make sure that payments go only to those who are identified. I think the heart of the argument that's being pressed here by appellants is this just isn't fair. You're settling with some, but not with others. And under this court's decision in Dussault, equity doesn't alter the law. It doesn't change the statute. As a matter of law, Argentina has no interest in the trust funds, so appellants have nothing upon which they might execute. Just one point of information. I've been mulling a little bit the definition of interest as it's used in trust laws, as it's used in the turnover statute, and as it's applied, I guess, in the FSIA. Are they coterminous, or do you detect different shadings? Should we look for any nuance in the statutes with respect to the interest in property that is? Well, from our standpoint as a New York common law trustee, under this trust agreement, interest is defined as what is the legal interest. If you look to the restatement of trusts and the cases of this court accepting that, we focus on what constitutes a legal interest. What appellants are arguing, there may be an appeal to equity, but it doesn't create a legal interest such that we as trustee could have any obligation. To the contrary, our obligation is to ensure that monies go only to our trust beneficiaries. I would just conclude saying that this court, in affirming the vocateur in the NML injunctions, noted that the plaintiffs there never had a legal entitlement to an injunction. Plaintiffs are free to negotiate, to litigate, or to seek a new injunction. None of that gives them an interest here in this trust. Thank you. Thank you. We'll hear the rebuttal. I'd just like to go back to the question that you just asked. I think that there is a nuance in the idea of what interest is. And as I mentioned, when I was trying to find cases, you know, on point for our situation looking to do a turnover of a trust, there weren't any cases that actually have addressed this issue. But the cases that have are in the tax context. And that is where they do look at the facts and the circumstances and whether or not a settler or a grantor actually retains the interest to decide who the beneficiaries or the recipients of any funds in a trust are. Of course, the tax context is in this context. Right. Exactly. But that's the, you know, closest that we could come, you know, in that context. One other point that I wanted to make in the Dessault decision, you asked if it was on all fours, I think some of the most important aspects of that decision are what it didn't address. It didn't address the first step under the Bouvet analysis as to whether or not Argentina had an interest. It was implied that it did in the trust, which was the same scenario that we're at right now, where it was a trust created at Bank of New York to pay the exchange bondholders. So I think that's actually significant here. Are you aware of any material differences between those agreements, those trust instruments? You'd have to ask Bank of New York. I mean, I wasn't involved in that litigation, so I'm not sure if there was or not. The other aspect is under the second step of Bouvet as to whether or not Argentina was entitled to possession of the trust funds, the court only looked to the fact that it was enjoined by the injunctions that this court had upheld that barred Argentina from reaching those funds. It didn't consider whether or not the trust itself and its language would also bar, as you brought up, Your Honor, the irrevocable language. So I think that that's actually an important consideration for this court in deciding whether or not assault is actually applicable here. And I guess the only other aspect I wanted to address was on the discovery issue. My clients are basically in an untenable position right now for practical considerations as the appellees have admitted and as stated in the trust agreement, the funds will be moved outside of this country before we would have had a chance to pursue formal discovery. So that was the reason that we pursued the motion. But under Supreme Court precedent of the NML case that was decided in 2004 and this court's application of that case. Did the district court give your clients an opportunity to make a formal motion for discovery? Well, the court actually in its decision, which is why we brought it before this court on appeal, decided or it encouraged us to pursue formal discovery. But at the same time, it also... Did you do that? No, we didn't. But the reason that we didn't is because it also stated in that decision that it would deny it based on the fact that it didn't reasonably relate to attachable assets because it found that the proceeds weren't subject to turnover. Thank you. Movers are at decision.